287 F.2d 159
 38 P.U.R.3d 276
 UNITED GAS IMPROVEMENT COMPANY, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent, Sunray Mid-Continent
Oil Company, Transcontinental Gas Pipe Line
Corporation, Public Service Commission
of the State of New York, Intervenors.
 No. 6280.
 United States Court of Appeals Tenth Circuit.
 Jan. 23, 1961.
 
 J. David Mann, Jr., Washington, D.C. (John E. Holtzinger, Jr., Washington, D.C., William E. Zeiter, Philadelphia, Pa., and Morgan, Lewis & Bockius, Washington, D.C., of counsel and on the brief), for petitioner, United Gas Improvement Co.
 Howard E. Wahrenbrock, Solicitor, Washington, D.C. (John C. Mason, General Counsel, Robert L. Russell, Asst. General Counsel, and David J. Bardin, Washington, D.C., Attorney), for respondent, Federal Power Commission.
 Melvin Richter, Washington, D.C. (M. Darwin Kirk, Homer E. McEwen, Jr., Tulsa, Okla., and Dale E. Doty, Washington, D.C., on the brief), for intervenor Sunray Mid-Countinent Oil Co.
 John T. Miller, Jr., Washington, D.C. (Richard J. Connor, Thomas F. Brosnan, Washington, D.C., and James B. Henderson, William N. Bonner, Jr., Houston, Tex., Gallagher, Connor & Boland, Washington, D.C., of counsel and on the brief), for intervenor, Transcontinental Gas Pipe Line Corporation.
 Kent H. Brown, Albany, N.Y., for intervenor, Public Service Commission of New York.
 Before BRATTON, PICKETT and BREITENSTEIN, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 This case is another incident in the controversy over the initial rates for the sale of natural gas by southern Louisiana producers to pipeline companies for transmission to the Philadelphia and New York areas. The Federal Power Commission (Commission) granted a certificate of public convenience and necessity for the sale by Sunray Mid-Continent Oil Company (Sunray)[1] of natural gas produced in the Point Au Fer field, Terrebonne Parish, Louisiana, to Transcontinental Gas Pipe Line Corporation (Transco)[2] at an initial base price of 21.5 cents per thousand cubic feet (Mcf) plus reimbursement for Louisiana taxes in the amount of 2.05 cents per Mcf. The petition for review is brought by United Gas Improvement Company (UGI) which distributes gas in the Philadelphia area and which intervened in the Commission proceedings. Public Service Commission of the State of New York, an intervenor below, has intervened here on the side of UGI. Sunray and Transco also have intervened here and support the Commission. The controlling issue is whether in granting an unconditional certificate to Sunray the Commission satisfied the requirements stated in Atlantic Refining Co. v. Public Service Commission of New York, 360 U.S. 378, 79 S.Ct. 1246, 1254, 3 L.Ed.2d 1312 (CATCO).
 
 
 2
 In CATCO the Supreme Court considered a Commission order certificating sales of natural gas from southern Louisiana sources by four independent producers to Tennessee Gas Transmission Company at an initial base rate of 22.4 cents per Mcf. The Court remarked on the intent of Congress in the passage of the Natural Gas Act 'to give full protective coverage to the consumer as to price' and mentioned the price controls found in 4 and 5 of that Act.[3] The sales considered in CATCO, like the sale here, required compliance with 7(c) and (e)[4] in order to be effective. The applicable provisions forbid such sales without the issuance by the Commission of a certificate of public convenience and necessity. Section 7 contains no provision for the suspension of a rate or for protection against overcharges but does empower the Commission to impose such terms and conditions as the public convenience and necessity may require.
 
 
 3
 The CATCO opinion holds that in a 7 proceeding a 'just and reasonable' rate hearing is not a prerequisite to the issuance of a certificate. The Commission must evaluate 'all factors bearing on the public interest.' Price is 'a consideration of prime importance.' If the proposed price is not in the public interest because 'it is out of line,' because it may result 'in a triggering of general price rises,' or because it may bring about 'an increase in the applicant's existing rates by reason of 'favored nation' clauses or otherwise, Commission in the exercise of it discretion might attach such conditions as it believes necessary.' The Court pointed out that 'the initial price will set a pattern in an area where enormous reserves of gas appear to be present,' and set aside the order on the ground that there was insufficient evidence to support the required finding of public convenience and necessity.
 
 
 4
 After the CATCO decision the Third Circuit affirmed the Commission in United Gas Improvement Company v. Federal Power Commission, 3 Cir., 269 F.2d 865. That case, to be hereinafter referred to as Transco-Seaboard, involved the certificating by the Commission of sales of southern Louisiana gas to Transco, the same pipeline company as is involved here.[5] The prices ranged from 22.4 cents to 23.55 cents. On certiorari the Supreme Court reversed summarily with directions to remand the case to the Commission for reconsideration and redetermination in the light of CATCO.[6]
 
 
 5
 Before the CATCO decision, examiners for the Commission had conducted hearings on several applications relating to the sale of southern Louisiana gas. We are here concerned with one of those applications. The report of the examiner preceded CATCO. The order of the Commission was made after CATCO and after the Third Circuit decision in Transco-Seaboard but before the Supreme Court reversal of Transco-Seaboard. Two other applications which pertain to southern Louisiana gas and which were determined by the Commission under conditions similar to those presented here have now made their way through courts of appeals and have resulted in the rejection of the Commission order in each instance. These cases are United Gas Improvement Company v. Federal Power Commission, 9 Cir., 283 F.2d 817, 821,[7] and Public Service Commission of the State of New York v. Federal Power Commission, D.C.Cir., 287 F.2d 146. The Ninth and District of Columbia circuits agree that the records before them disclosed a failure of the Commission the meet the standards of CATCO because the rates were 'out of line' and there was no showing of public convenience and necessity. The circuits further agree that the Commission had improperly used, for comparative purposes, prices which were under review and that 'where a substantial number of certificated prices are thus under court or Commission review, like prices in the same area though not currently under review ought to be regarded as suspect.'
 
 
 6
 There is an impelling reason to regard the price proposal in the case at bar as suspect. Transco-Seaboard involved two sales of gas from the Point Au Fer filed to Transco,[8] and Sunray, the applicant here, had an interest in some of the wells from which would be produced the gas covered by the sales.[9] In view of the summary reversal of Transco-Seaboard it would be presumptuous on our part to say that the sale here from the same field and at the same price as one sale from that field involved in Transco-Seaboard is 'in line' and in accordance with public convenience and necessity.
 
 
 7
 The price comparisons made in the case at bar are subject to the same criticism as was made by the Ninth Circuit and agreed to by the District of Columbia Circuit. With few exceptions they involve applications pending before the Commission or on review in the courts. At least until some final disposition of the CATCO and Transco-Seaboard applications, all of the prices submitted must be regarded as suspect.
 
 
 8
 Counsel for the Commission have submitted a memorandum contrining the Commission's 'Statement of General Policy No. 61-1-- Establishment of price standards to be applied in determining the acceptability of initial price proposals and increased rate filings by independent producers of natural gas,' issued September 28, 1960, and the first amendment thereto issued October 25, 1960. These statements are said to show a Commission policy to 'hold the line' on initial prices that conforms with CATCO. While the Commission order now under review must be judged on the basis of the record made before the Commission[10] and these statements are not in that record, nevertheless the submitted statements are used by UGI and PSC to sustain their positions. The first statement lists prices by geographical areas but omits the listing of initial prices for southern Louisiana and Mississippi. The reason assigned for this omission is that the proper initial price level for these areas is subject to hearings pursuant to Supreme Court decisions. This is an implied admission by the Commission that at the date of the statement it had not determined the 'line' for initial prices in the two areas. The amendment fixes a price of 21.5 cents per Mcf for southern Louisiana and Mississippi,[11] but says that such action is not 'a prejudgment of the cases presently being reconsidered separately by us upon remand from the Supreme Court.' In such circumstances, the price stated does not rise above the 'suspect' class criticized in the decisions of the Ninth and District of Columbia circuits.
 
 
 9
 We are convinced that the record fails to show that the proposed initial price is 'in line.' It is conceivable that in some circumstances public convenience and necessity may require the certificating of a sale when the price is 'out of line.' The record shows no such situation here. It shows a willing seller and a willing buyer arriving at a contract price through arms length bargaining. This is not enough to show that public convenience and necessity requires the issuance of a certificate. The only additional evidence is the statement by a Transco officer that Transco needs the supply to sustain its inventory and to meet the ever-increasing demands of its customers.[12] All this sketchy evidence does is to show a need by Transco. It falls far short of establishing that the sale is in the public interest.
 
 
 10
 We see nothing in this case which demands a different disposition than that made by the Supreme Court in the Transco-Seaboard case or by the Ninth and District of Columbia circuits in the mentioned cases which they have decided.
 
 
 11
 The Commission order is vacated and the cause is remanded to the Commission for further proceedings consistent with this opinion.
 
 
 
 [1]
 Sunray, a Delaware corporation having its principal place of business in Tulsa, Oklahoma, is a 'natural-gas company' within the meaning of the Natural Gas Act, 52 Stat. 821-833 as amended, 15 U.S.C.A. 717-717w
 
 
 [2]
 Transco, also a 'natural-gas company,' owns and operates a pipeline system which extends from southern Texas to New York City
 
 
 [3]
 15 U.S.C.A. 717c and 717d. Section 4 empowers the Commission to suspend a new rate schedule for five months, at the end of which period, if the rate has not been acted upon by the Commission, it may go into effect upon the posting of a bond to refund subsequently determined overcharges. Section 5 authorizes the Commission to conduct rate investigations but contains no provision for a bond to cover overcharges
 
 
 [4]
 15 U.S.C.A. 717f(c) and (e)
 
 
 [5]
 As will be later noted, two of these sales were from the Point Au Fer field, the source of the gas covered by the instant application
 
 
 [6]
 In the Supreme Court the style of the case was Public Service Commission of the State of New York v. Federal Power Commission, 361 U.S. 195, 80 S.Ct. 292, 4 L.Ed.2d 237
 
 
 [7]
 This case involved sales of gas produced in Terrebonne Parish, the parish in which the Point Au Fer field is located, at a base price of 21.5 cents per Mcf plus tax reimbursement of 2.3 cents per Mcf
 
 
 [8]
 In one of these the price was 21.5 cents per Mcf plus tax reimbursement of 2,05 cents per Mcf. In the other the base price was 21.5 cents and the tax reimbursement 1,8 cents
 
 
 [9]
 This application came too late to be consolidated with the hearings which resulted in the orders reviewed in Transco-Seaboard
 
 
 [10]
 Securities and Exchange Commission v. Chenery Corporation, 318 U.S. 80, 87, 63 S.Ct. 551, 87 L.Ed. 494
 
 
 [11]
 This price is apparently exclusive of tax reimbursement
 
 
 [12]
 The complete testimony in this regard was: 'Transcontinental is now using nearly one-half trillion feet of reserves each year to meet the requirements of its customers. To maintain the inventory of our system gas supply at a satisfactory level in the face of such annual depletion and the ever-increasing demands of our market customers, it is essential that we continually acquire new gas reserves. Further, whenever we find avilable to us upon the same or substantially the same terms, material additional reserves in fields where we are already certificated to buy gas, we consider it to the benefit of our company and our customers to buy such additional gas. The Sunray reserves at Pointe au Fer fall into this category.'