**J. M. HUBER CORPORATION,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent.
No. 13535.

United States Court of Appeals
Third Circuit.

Argued June 23, 1961.

Decided Sept. 14, 1961.

John T. Miller, Jr., Washington, D. C. (Thomas F. Brosnan, Washington, D. C., Thomas O. Moxcey, James B. Sandlin, Denver, Colo., Gallagher, Connor & Boland, Washington, D. C., on the brief), for petitioner.

Arthur H. Fribourg, Washington, D. C. (John C. Mason, General Counsel, Howard E. Wahrenbrock, Solicitor, Robert L. Russell, Asst. General Counsel, John D. Lane, Washington, D. C., on the brief), for respondent.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

J. M. Huber Corporation, the petitioner, is an independent producer selling natural gas in interstate commerce subject to the jurisdiction of the Federal Power Commission. After acquiring acreage in the Laverne Field, located in the Oklahoma Panhandle Area, Huber entered into a contract to sell gas from those holdings to the Michigan Wisconsin Pipe Line Company.

In accordance with the Natural Gas Act and the regulations issued pursuant thereto, on July 7, 1960, Huber applied to the Commission for a certificate of public convenience and necessity under

Section 7 of the Act. 15 U.S.C.A. § 717f; 18 C.F.R. § 153.23 et seq. In the same application, it also sought a temporary certificate under Section 7(c). 15 U.S.C.A. § 717f(c); 18 C.F.R. § 157.28. Huber tendered as its gas rate schedule, the contract with Michigan Wisconsin, which provided for a price of 17¢ per Mcf, plus 1/100 of 1¢ for each Btu in excess of 1000 Btu content per cubic foot.

On November 8, 1960, the Commission granted Huber temporary authority to sell the natural gas to Michigan Wisconsin, subject to the condition that the upward Btu clause be eliminated pending utlimate determination of the rate in the final hearing. Huber's application for rehearing on the temporary certificate was denied by the Commission on December 20, 1960.

■ We are satisfied that we have jurisdiction to pass upon the Commission's issuance of a temporary certificate. The granting of the temporary certificate with its attached condition aggrieved petitioner and is reviewable. 15 U.S.C.A. § 717r; Sunray Mid-Continent Oil Co. v. Federal Power Commission, 10 Cir.,* 1959, 270 F.2d 404, 407; Texaco, Inc. v. Federal Power Commission, 5 Cir., 1961, 290 F.2d 149, 157; The Pure Oil Company v. Federal Power Commission, 7 Cir., 1961, 292 F.2d 350.

Section 7(c) of the Natural Gas Act which allows the issuance of temporary certificates provides:

"*Provided, however,* That the Commission may issue a temporary certificate in cases of emergency, to assure maintenance of adequate service or to serve particular customers, without notice or hearing, pending the determination of an application for a certificate * * *."

Although this section does not specifically permit the Commission to condition the issuance of temporary certificates, that power has been held to be implicit in its language. Sunray Mid-Continent Oil Co. v. Federal Power Commission, supra; Texaco, Inc. v. Federal Power Commission, supra; The Pure Oil Company v. Federal Power Commission, supra. So the threshold question, as correctly stated by petitioner, is: "By what standard or standards is the lawfulness of a condition attached to a temporary certificate to be measured?"

■ Petitioner asserts that under the language in Sunray, supra, 270 F.2d at page 409, the conditioning of a temporary certificate " * * * must be in accord with the provisions of the Act * * *." From this, it is argued that the Commission's action in granting a temporary certificate under Section 7(c) must be circumscribed by all the standards imposed by the various sections of the Act.[1] We disagree. By its very nature, the issuance of a temporary certificate under Section 7(c) is a summary matter. It is an emergency provision. Under it, the Commission has discretion to either grant, grant conditionally or deny applications for temporary certificates. And, in contradistinction to the other sections of the Act, 7(c) contains no specific standard that the Commission must follow in fixing rates. However, the Commission's discretion under 7(c) is not unfettered. It is always subject to judicial review for an abuse of it. That is, where the Commission acts arbitrarily, capriciously, or not in accordance with the avowed purpose of the Act, judicial intervention is warranted.

In the case at bar, the conditioning of Huber's temporary certificate by eliminating the Btu adjustment clause from its contract with Michigan Wisconsin was in accord with the latest declared policy of the Commission. Following the

1. In its brief, petitioner states the proposition as follows:
"To be in accord with the provisions of the Natural Gas Act, the Commission's price condition must, at a minimum, be 'reasonable', 'required by the public convenience and necessity' [Section 7(e)], 'just' [Section 4(a)], 'nondiscriminatory' [Section 4(b)], and not serve to enlarge the Commission's jurisdiction [Section 1(b)]."

admonition of the Supreme Court in Catco (Atlantic Refining Co. v. Public Service Commission, 1959, 360 U.S. 378, 391, 79 S.Ct. 1246, 1255, 3 L.Ed.2d 1312, that: " * * * the inordinate delay presently existing in the processing of § 5 proceedings requires a most careful scrutiny and responsible reaction to initial price proposals of producers under § 7" the Commission on September 28, 1960, issued its Policy Statement No. 61–1, listing approved initial prices for the various marketing areas. This statement was no haphazard idea of the Commission, but a mature, carefully considered and presented plan. It declares at the outset: "This statement establishing rate standards for independent producers of natural gas is issued on our own motion and *is based on our experience gained after six years of regulation of independent producers under the Natural Gas Act."* (Emphasis supplied.) Outlining its support for the rates, the Commission said:

> "In arriving at the price levels for the various areas set forth in the appendix to this statement, we have considered all of the relevant facts available to us. Such consideration included cost information from all decided and pending cases, existing and historical price structures, volumes of production, trends in production, price trends in the various areas over a number of years, trends in exploration and development, trends in demands, and the available markets for the gas."

The statement is expressly and properly premised upon the expertise of the Commission. The elimination of the Btu adjustment from the price as allowed under the temporary certificate was merely the necessary follow through on the by then established price policy for the particular field. We are required to accept this statement if it is reasonably supported in the record. Texas Gas Transmission Corporation v. Shell Oil Co., 1959, 363 U.S. 263, 268, 80 S.Ct. 1122, 4 L.Ed.2d 1208. Prima facie it provides an adequate foundation for the price condition imposed. Petitioner sought emergency relief through a temporary certificate to prevent probable drainage of the reserves involved. In the circumstances that relief was granted without a hearing. By the time the certificate was allowed the new price policy relating to the Oklahoma Panhandle Area was in effect and is reflected in the certificate condition.[2]

That price policy as already noted was arrived at after consideration of "all the relevant facts available to us (the Commission)." Those facts included "cost information from all decided and pending cases, existing and historical price structures, volumes of production, trends in production, price trends in the various areas over a number of years, trends in exploration and development, trends in demands, and the available markets for the gas." In the statement the rule was laid down that the price levels determined "are for the purpose of guidance and *initial action by the Commission* and their use will not deprive any party of substantive rights *or fix the ultimate justness and reasonableness of any rate level."* (Emphasis supplied). And it made plain that "For the present, and in the absence of compelling evidence calling for other action by us, *proposed initial sales* of natural gas by independent producers *which include rates higher than those indicated in the appendix attached to this statement shall be denied a certificate or certificated only upon the condition that lower rates be filed and all rate changes filed under existing contracts which call for a rate exceeding the indicated price level in the attached ap-*

---

2. Petitioner raises some technical objections regarding the manner of publishing the Policy Statement, its amendments, etc. These, together with the argument re " * * * Giving Huber's Property To The Other Plant Owners * * * " and the comment as to " * * * The Reimbursement Feature of the Extraction Plant Operation", are not important. They need no discussion in the context of this opinion.

*pendix to this statement shall be suspended."* (Emphasis supplied).

█ Petitioner argues determinedly that the striking of the Btu adjustment is inconsistent with other certificates issued and amended contracts approved in the Laverne Field. It is true that prior to the Policy Statement of September 28, 1960, the Commission had issued certificates and approved contracts in the Laverne Field containing Btu adjustments. That practice came to an end with the Policy Statement. Its discontinuance was an integral part of the Commission's endeavor to limit the rise in gas prices. Since that time the numerous certificates granted in that field, both temporary and permanent, covering an initial rate do not contain Btu adjustment provisions.[3] Those decisions of the Commission have been consistent with its announced policy. That they vary from the previous practice does not concern us in the present situation. The Commission acted responsibly and commendably in the public interest. We do not understand that there is any doubt but that the Commission has the continuing duty to keep abreast of all phases of the gas industry with which it is concerned. The sought for result is that initial prices at the wellhead will eventually be the same for the whole Oklahoma Panhandle Area. Huber is receiving the highest allowed initial rate for new sales of gas in that territory. There is at the least serious challenge by the Commission respecting the Btu content of the gas involved, whether the clause is operating and if it is, the extent of its operation. These items and the important general questions of whether such adjustment clauses are advisable at all and if so under what conditions can be developed at final hearing. It was not intended to attempt to pass upon them at this preliminary stage and it would be impossible to do so.

Petitioner also stresses the proposition that should the Btu clause be ultimately upheld, it will be unable to obtain compensation from that source for the temporary period unless a fund representing such amounts be escrowed for return to the payor in the event the condition is finally sustained. Since the oral argument in the review at bar the Court of Appeals for the Seventh Circuit facing a situation similar to the one before us concluded that:[4]

"Temporary certification of the sale of gas at the initial contract price upon condition that petitioner refund any amount received in excess of that ultimately found proper in the public interest would have protected all interests pending determination after hearing. Cf. Texaco, Inc. v. Federal Power Commission, 5 Cir., 1961 290 F.2d 149.

"Conditioning the order in proper terms will further eliminate the alleged discrimination, disparity, and accounting problem of which petitioner complains, pending proceedings wherein these factors may be examined and weighed by the Commission in determining the requirements of the public interest."

On July 31, 1961, the Commission, after consideration of the Pure Oil decision, followed it in its Apache Oil Corporation letter order of that date (F.P.C. Docket C161–1422) concerning much the same subject matter as here involved.

In view of its acceptance of the Pure Oil formula as a part of its policy program respecting the Btu problem, the Commission now urges that its letter order of November 8, 1960 be remanded to it for reconsideration and modification of the challenged condition in the light of the Pure Oil opinion and in line with its Apache Oil Corporation letter order.

3. A recent temporary authority issued by the Commission to Pan American Petroleum Corporation in its docket G–20049 far from showing inconsistency in the declared policy of the Commission, emphasizes its adherence to it. The rate for the south Louisiana field there before the Commission was designated in the statement as "Not determined."

4. The Pure Oil Company v. Federal Power Commission, 7 Cir., 1961, 292 F.2d 350, 353.

In our judgment the forthright agreement of the Commission to the useful method worked out by the Seventh Circuit covering Btu payments prior to the ultimate rate determination, substantially gives petitioner the relief it has sought.

Said letter order of November 8, 1960, will accordingly be remanded to the Commission for the purposes above set forth.