**SOHIO PETROLEUM COMPANY,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent.

No. 6710.

United States Court of Appeals
Tenth Circuit.

Dec. 19, 1961.

Francis H. Caskin, Washington, D. C. (Dixon Morgan and McAfee, Hanning, Newcomer & Hazlett, Cleveland, Ohio, on the brief), for petitioner.

Arthur H. Fribourg, Washington, D. C. (Ralph S. Spritzer, Howard E. Wahrenbrock, and Robert L. Russell, Washington, D. C., on the brief), for respondent.

Before LEWIS and BREITENSTEIN, Circuit Judges, and CHRISTENSON, District Judge.

LEWIS, Circuit Judge.

By petition filed under Sec. 19(b) of the Natural Gas Act, 15 U.S.C.A. § 717r(b), Sohio Petroleum Company seeks review of a letter order of the Federal Power Commission entered December 19, 1960, whereby the Commission authorized the issuance of a temporary certificate of public convenience and necessity to Sohio subject however to a condition which Sohio attacks as discriminatory and violative of the purposes of the Natural Gas Act and the essentials of due process. The condition imposed was the unqualified elimination of a price adjustment clause contained in Sohio's contract of sale of natural gas made with Michigan-Wisconsin Pipeline Company, the buyer.

Sohio is one of many producers of natural gas in the Laverne Field located in the Panhandle area in Oklahoma, each of whom has contracted to sell to Michigan-Wisconsin at a price of 17¢ per Mcf. plus 1/100 of 1¢ for each Btu in excess of 1,000 Btu content per cubic foot at wellhead. The initial discovery of the Laverne Field occurred in 1957 and subsequent developments have proven the field to be one of great magnitude. Between the date of discovery and September 28, 1960, the Commission issued many certificates, both temporary and permanent, approving the sale of Laverne gas to Michigan-Wisconsin at the contract price, 17¢ plus Btu adjustment. Sohio holds several such certificates. After September 28, 1960, the Commission has approved, as here, the granting of certificates only upon condition that the contract provision for upward price adjustment for Btu content be eliminated and that the authorized price be a flat 17¢ per Mcf. The significance of the September date lies in the issuance by the Commission of its Statement of General Policy No. 61–1, 18 F.P.C. 818,[1] in which the price of 17¢ per Mcf. was listed for initial service rates in the Laverne Field.

The action of the Commission in conditioning Sohio's temporary certificate is a proper matter for review. Sunray Mid-Continent Oil Co. v. Federal Power Commission, 10 Cir., 270 F.2d 404; Texaco, Inc. v. Federal Power Commission, 5 Cir., 290 F.2d 149; Pure Oil Company v. Federal Power Commission, 7 Cir., 292 F.2d 350; J. M. Huber Corporation v. Federal Power Commission, 3 Cir., 294 F.2d 568. The same authority in each circuit also recognizes the power of the Commission to condition temporary certificates subject only to the limitations of due process and the general jurisdiction accorded the Commission by the provisions of the Act.[2]

There is, as in United Gas Improvement Co. v. Federal Power Commission, 10 Cir., 287 F.2d 159, 162, "an impelling

---

1. The statement followed the decision of the Supreme Court in "Catco," Atlantic Refining Co. v. Public Service Commission, 360 U.S. 378, 79 S.Ct. 1246, 3 L.Ed. 2d 1312, and purports to follow the admonitions and principles set forth in that case.

2. In J. M. Huber Corporation v. Federal Power Commission, 294 F.2d 568, the Third Circuit rejected a contention that we had held in Sunray Mid-Continent v. Federal Power Commission, 10 Cir., 270 F.2d 404, that the Commission's action

in granting a temporary certificate under Sec. 7(c) must be circumscribed by all the standards imposed by the various provisions of the Act. In Sunray we stated (p. 408): " * * * such power is limited only by the general purposes of the Natural Gas Act and by constitutional restrictions * * *" and at 409: that the condition "must be in accord with the provisions of the Act and must meet the test of constitutional due process." We are in complete accord with the Third Circuit's interpretation of our language.

reason to regard the price proposal in the case at bar as suspect." As a result of the Commission action in conditioning Sohio's certificate that producer may be compelled to sell gas from the same field and, indeed, from the same well to the same buyer at different prices. Other producers are similarly faced with different approved prices for the same gas. Realism requires the recognition of existing discrimination and it remains only to determine if such discrimination is unlawful in view of the general right and power of the Commission to determine price levels in the public interest. Under identical circumstances, the Seventh Circuit has held that the Commission had no authority to impose a reduction of the initial sales price as a condition to the granting of temporary authority of sale. Pure Oil Company v. Federal Power Commission, 7 Cir., 292 F.2d 350, 353. That court did not consider the promulgation of the Statement of General Policy No. 61–1, as that statement affected the Laverne Field, as justification for the initial rate there proposed, that is 17¢ per Mcf. The Third Circuit, also considering the identical problem, adopted a somewhat different view as to the effect of the Statement of General Policy. In J. M. Huber Corp. v. Federal Power Commission, 294 F.2d 568, 570–571, Judge McLaughlin indicated that the Statement was a proper premise for the establishment of an initial rate, was "properly premised upon the expertise of the Commission," and noted that the "Commission has the continuing duty to keep abreast of all phases of the gas industry with which it is concerned." We agree with Judge McLaughlin's views.

█ Prior to the issuance of Policy Statement 61–1 the in line price level for the Laverne Field had, by the approval of numerous certificates, been established by the Commission at 17¢ per Mcf. plus the Btu adjustment clause. The Commission thereafter could not, without specific justification, approve or condition a price that was out of line. United Gas Improvement Co. v. Federal Power Commission, 10 Cir., 287 F.2d 159. But the Commission had both the right and duty to re-examine and determine the reasonableness of the in line price to assure that such price continually served the public interest. The extensive study of the Commission taken before the issuance of Statement 61–1 negatives any aspect of arbitrariness. The Commission declared in the Statement:

"In arriving at the price levels for the various areas set forth in the appendix to this statement, we have considered all of the relevant facts available to us. Such consideration included cost information from all decided and pending cases, existing and historical price structures, volumes of production, trends in production, price trends in the various areas over a number of years, trends in exploration and development, trends in demands, and the available markets for the gas."

█ The purpose of establishing an in line price is of course the stability accorded producer, buyer, and the public in balance with the respective interests of each. Permanence is dependent upon the maintenance of such balance and the duty to guard, review, and, if necessary, change the in line price rests with the Commission. We have no doubt that the Commission can, as here, summarily initiate such change by a Statement of Policy properly premised upon accepted standards. Its action is ultimately subject to review and, pending such review, the Commission has the duty to so safeguard the rights of interested parties as to minimize the possibility of discrimination in its summary action. The action of the Commissoin in the instant case offers no such safeguard to Sohio for, if the Michigan-Wisconsin contract price is ultimately determined to be reasonable, no remedy exists for Sohio to recoup its loss of revenue which would occur during the temporary period. We deem the order of the Commission requiring the unqualified elimination of the Btu adjustment clause in petitioner's contract as a condition for temporary authority to sell its gas as arbitrary and

discriminatory and to require the case to be remanded for further consideration by the Commission.

Both the Seventh Circuit in Pure Oil and the Third Circuit in Huber have similarly remanded those cases for reconsideration and have indicated anticipatory approval of

"Temporary certification of the sale of gas at the initial contract price upon condition that petitioner refund any amount received in excess of that ultimately found proper in the public interest. * * * "

Pure Oil Company v. Federal Power Commission, 292 F.2d 350, 353–354; J. M. Huber Corporation v. Federal Power Commission, 294 F.2d 568, 571.

Presumably, the petitioners in Pure Oil and Huber were willing to accept temporary certification under such conditions. If so, we see no objection to such disposition. Petitioner here, however, in reliance upon Sunray Mid-Continent Oil Co. v. Federal Power Commission, 10 Cir., 270 F.2d 404, has resisted a Commission offer to voluntarily reconsider its letter order within the strict limitations of the conditions indicated in Pure Oil. We believe petitioner's position to have merit. If the issuance by the Commission of its Statement of General Policy No. 61–1 has significance for the Laverne Field it lies in the rate of 17¢ per Mcf. The Statement absent this figure is meaningless and temporary certification absent this figure is not premised on the expertise of the Commission as evidenced by the Statement.

The Statement announces the maximum rate for gas from the Laverne area which is acceptable to the Commission for temporary certification without consideration of particular circumstances which, as here, would make unconditional certification at such rate discriminatory. The rate also has significance to the producer as a floor price. Proper temporary certification should reflect the rate of 17¢ per Mcf. conditioned, however, to protect Sohio should the higher rate of 17¢ per Mcf. plus Btu adjustment be ultimately found to be proper in the public interest.

The case is remanded to the Commission for further consideration.