327 F.2d 893
 PUBLIC SERVICE COMMISSION OF the STATE OF NEW YORK, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent,
E. Cockrell, Jr., et al., Placid Oil Company, and J. Ray McDermott & Company, Inc., Intervenors.
 No. 17673.
 United States Court of Appeals District of Columbia Circuit.
 Argued November 5, 1963.
 Decided January 2, 1964.
 
 Mr. Kent H. Brown, Albany, N. Y., with whom Mr. Morton L. Simons, Washington, D. C., and Mrs. Barbara M. Suchow, New York City, were on the brief, for petitioner.
 Mr. Paul A. Sweeney, Special Consultant, with whom Messrs. Richard A. Solomon, General Counsel, Robert L. Russell, Assistant General Counsel, and Peter H. Schiff, Attorney, Federal Power Commission, were on the brief, for respondent.
 
 
 1
 Mr. Cecil N. Cook, Houston, Tex., of the bar of the Supreme Court of Texas, pro hac vice, by special leave of court with whom Mr. Murray Robinson, Houston, Tex., was on the brief for intervenors E. Cockrell, Jr., and Texas Production Co., argued for all intervenors.
 
 
 2
 Mr. W. Scott Wilkinson, Shreveport, La., was on the brief for intervenor Placid Oil Co.
 
 
 3
 Mr. Donald J. Mulvihill, Washington, D. C., was on the brief for intervenor J. Ray McDermott & Co., Inc.
 
 
 4
 Messrs. Bruce R. Merrill, Houston, Tex., Charles E. McGee, and Edwin S. Nail, Washington, D. C., were on the brief for Continental Oil Co., Sinclair Oil & Gas Co. and Amerada Petroleum Corporation, respectively, as amici curiae, urging affirmance.
 
 
 5
 Before FAHY, WASHINGTON and DANAHER, Circuit Judges.
 
 
 6
 FAHY, Circuit Judge.
 
 
 7
 The Public Service Commission of the State of New York petitions for review of orders of the Federal Power Commission granting temporary authorizations or certificates of public convenience and necessity under Section 7(c) of the Natural Gas Act[1] to three independent producers[2] of natural gas. The certificates were issued pending outcome of proceedings on applications for permanent certificates for authority to sell natural gas to the Tennessee Gas Transmission Company, an interstate pipeline company, for resale in interstate commerce under contracts calling for an initial price of 23.675¢ per Mcf., with escalation clauses. In support of their requests for temporary certificates the applicants alleged that certain of their fields may be suffering drainage and that under their contracts with the royalty owners they were obligated to pay shut-in royalties until such time as deliveries could commence, thereby subjecting them to continuing economic hardship. Applicants Cockrell, The Texas Production Co. and Placid, see note 2, supra, also alleged that they were having to "flare" casinghead gas thereby depriving the public of a valuable natural resource. In each case the Commission found an emergency to exist which supported the issuance of the temporary certificates, which, however, were conditioned on the initial price being reduced to 21.25¢ per Mcf.
 
 
 8
 The day following issuance of the certificates PSC intervened and filed objections.[3] It applied for a rehearing and for reconsideration, which the Commission granted but, following additional proceedings, then denied. Then came PSC's petition to this court for review. McDermott, Placid, Cockrell and The Texas Production Co., see note 2, supra, have intervened as parties to the court proceedings.
 
 
 9
 Initially we consider the contention of intervenors that PSC's petition should be dismissed as not within the jurisdiction of the court under Section 19 (b) of the Act,[4] which permits review by a party to the Commission proceedings who is aggrieved by its order. The Commission does not raise this jurisdictional objection, and we do not sustain it. PSC intervened, see note 3, supra, and became a party before the Commission immediately after the temporary certificates were issued and while they were subject to reconsideration. Since such certificates are issued without notice or hearing judicial review may not be cut off by lack of intervention before their issuance, especially when, as here, intervention has promptly occurred, followed by the Commission's denial of the PSC petition for reconsideration. PSC as a customer is in the aggrieved party category, and the orders have the requisite finality for judicial review; for while they are not final dispositions of the applications they are final insofar as the issuance of temporary certificates is concerned. It is the power of the Commission in this connection that PSC primarily contests.[5]
 
 
 10
 PSC contends that the Commission has no authority to issue temporary certificates to independent producers where the claimed emergency is due to drainage, threatened loss of lease, flaring, and economic hardship resulting from the payment of shut-in royalties. It contends that the sole provision for temporary certificates is found in the following language of Section 7(c) of the Act:
 
 
 11
 "[T]he Commission may issue a temporary certificate in cases of emergency, to assure maintenance of adequate service or to serve particular customers, without notice or hearing, pending the determination of an application for a certificate * * *." It is not disputed that the present emergency grants were not "to assure maintenance of adequate service or to serve particular customers;" but the Commission counters that these restrictions apply only to temporary certificates issued to pipelines. It points out that emergencies affecting independent producers, sufficient to authorize the issuance to them of temporary certificates, may arise from "drainage, threatened loss of lease, flaring, economic hardship resulting from payment of shut-in royalties, or similar situations." These are the criteria set forth in Commission Regulation § 157.28(c),[6] promulgated in 1956, upon the basis of which the Commission has been issuing temporary certificates to independent producers.
 
 
 12
 The question is whether Regulation § 157.28(c) is valid. We think it is. The power to issue temporary certificates is not limited to emergencies "to assure maintenance of adequate service or to serve particular customers." As the legislative history makes clear this language has a special relationship to pipelines.[7] The court should not construe this affirmative grant of authority as excluding authority in other situations if its exercise finds justification in the Act as a whole. As to this, Section 16,[8] relied upon to support Regulation § 157.28 (c),[9] empowers the Commission to perform any and all acts and to prescribe, issue, make, amend or rescind such orders or regulations as it may find necessary or appropriate to carry out the provisions of the Act.
 
 
 13
 When the decision of the Supreme Court in Phillips Petroleum Co. v. Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954), held that the Commission could no longer refuse to assume jurisdiction over independent producers it was required to adjust its administrative machinery to the necessity of acting upon thousands of new applications for certificates by such producers to enable them to sell their gas for resale in interstate commerce. In meeting this responsibility it was reasonable for the Commission to adopt means comparable to those the Act expressly gave in the case of pipelines for insuring that the public interest would not be impaired by the lapse of time between the filing of a producer's application for a certificate of public convenience and necessity and the Commission's final action on the application. To do this it was necessary for the Commission to adjust its emergency criteria to the nature of gas production rather than to the nature of gas transportation. We assume Congress contemplated from the beginning that the Commission's jurisdiction extended to independent producers, although it set forth no clear criteria to govern the issuance of temporary certificates to them. But we are not required to assume also that it contemplated limiting such certificates to pipelines, even if the restrictive language of Section 7 applies only to pipelines. No provision in the Act is to the effect that temporary certificates may be issued only to pipelines; and Section 16, certainly when read with Section 7, supports their issuance to independent producers under emergency conditions defined by Regulation § 157.28(c).
 
 
 14
 While the Natural Gas Act is a statute and is not to be construed as a "constitution," nevertheless the problems placed under Commission administration, with consequent Commission responsibilities, call upon the courts to give the Act a scope reasonably necessary to permit the agency to perform its tasks consistently with the provisions and purposes of the legislation. The broad grant of implementing authority conferred by Section 16 is not confined to procedural regulations and we think easily encompasses Regulation § 157.28(c).[10] It is not contended that this regulation, if within the Act, goes beyond the legislative power of Congress to authorize.
 
 
 15
 All authority of the Commission need not be found in explicit language. Section 16 demonstrates a realization by Congress that the Commission would be confronted with unforeseen problems of administration in regulating this huge industry and should have a basis for coping with such confrontation. While the action of the Commission must conform with the terms, policies and purposes of the Act, it may use means which are not in all respects spelled out in detail. See American Trucking Ass'ns v. United States, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953); National Broadcasting Co. v. United States, 319 U.S. 190, 217-221, 63 S.Ct. 997, 87 L.Ed. 1344 (1943).
 
 
 16
 We accordingly uphold the authority of the Commission to have adopted Regulation § 157.28(c), and the validity under this regulation of these temporary certificates. It is of some significance that the issuance of such certificates to independent producers has been tacitly accepted as valid in a number of cases,[11] hundreds have been issued since 1954, and since 1957 at the latest the Annual Reports of the Commission have advised Congress of this practice.
 
 
 17
 PSC contends further that in any event these authorizations are invalid on three other grounds, namely, (1) that Tennessee had no need for the gas and that by reason of the "take or pay" provision in the contracts it was obliged to pay for gas it could not take, to the detriment of ultimate consumers; (2) no determination was made as to the period of emergency; and (3) the price fixed for the sale of the gas was out-of-line. Since the temporary authorizations were issued without notice or hearing and without a record which enables us intelligently to pass upon these contentions we are unable to say now that the action of the Commission in any of these respects was so clearly arbitrary or unreasonable as to justify us in setting it aside. See J. M. Huber Corp. v. Federal Power Comm., 294 F.2d 568, 569 (3d Cir. 1961). We do not intimate that any of these questions are foreclosed in the further Commission proceedings, which we are advised are now far advanced along the route toward permanent certificates. Perhaps we should point out on the issue of the failure of the Commission to determine the period of the emergency that since, as we hold, temporary authorizations may validly be issued to independent producers, it is not unreasonable for the Commission to continue them in effect until, considering its administrative problems, it can cope with the particular cases on the basis of records which enable it to do so intelligently. In any event we cannot say that the continued existence of these temporary certificates up to now renders them invalid.
 
 
 18
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 56 Stat. 83 (1942), 15 U.S.C. § 717f (c) (1958)
 
 
 [2]
 The producers are J. Ray McDermott & Co., Inc., Placid Oil Company, E. Cockrell, Jr., and The Texas Production Co
 
 
 [3]
 It appears that PSC's notices of intervention were sent from New York October 8, 1962, and were received by the Commission October 10. The temporary certificates had been issued October 9, without notice or hearing and without PSC having been advised of their issuance before it intervened
 
 
 [4]
 52 Stat. 831 (1938), as amended, 15 U.S.C. § 717r (b) (1958)
 
 
 [5]
 Decisions to the general effect that an intervenor accepts the status of litigation at the time of intervention are not applicable to these Commission procedures
 
 
 [6]
 18 C.F.R. § 157.28(c) (1961)
 
 
 [7]
 See H.R. Rep. 1290, 77th Cong., 1st Sess., pp. 2-3, 5 (1941); Hearings before the House Committee on Interstate and Foreign Commerce on H.R. 5249, 77th Cong., 1st Sess., pp. 51, 82, 83-84 (1941). For a discussion of the legislative history see Algonquin Gas Transmission Co. v. Federal Power Comm., 201 F.2d 334, 339-340 (1st Cir. 1953)
 
 
 [8]
 52 Stat. 830 (1938), 15 U.S.C. § 717o (1958).
 
 
 [9]
 As authority for the regulation the Commission cited both sections 7 and 16. FPC Order 193, 21 Fed.Reg. 9166 (1956)
 
 
 [10]
 PSC also contends that Regulation § 157.28(c) is invalid in that the emergency criteria it sets forth are designed to protect, not the public, but the producers from economic hardship and that such an objective conflicts with rather than effectuates the intent and purpose of the Natural Gas Act. However, even were the regulation only of benefit to producers, which we do not hold, the Supreme Court has pointed out: "It seems plain that Congress, in so drafting the statute, was not only expressing its conviction that the public interest requires the protection of consumers from excessive prices for natural gas, but was also manifesting its concern for the legitimate interests of natural gas companies in whose financial stability the gas-consuming public has a vital stake." United Gas Pipe Line Co. v. Memphis Light Gas & Water Div., 358 U.S. 103, 113, 79 S.Ct. 194, 200, 3 L.Ed. 2d 153 (1958)
 
 
 [11]
 Hunt v. Federal Power Comm., 306 F. 2d 334 (5th Cir. 1962), cert. granted, 375 U.S. 810, 84 S.Ct. 70, 11 L.Ed.2d 47 (1963); American Liberty Oil Co. v. Federal Power Comm., 301 F.2d 15 (5th Cir. 1962); J. M. Huber Corp. v. Federal Power Comm., 294 F.2d 568 (3d Cir. 1961); Pure Oil Co. v. Federal Power Comm., 292 F.2d 350 (7th Cir. 1961); Sohio Petroleum Co. v. Federal Power Comm., 298 F.2d 465 (10th Cir. 1961); Texaco, Inc. v. Federal Power Comm., 290 F.2d 149 (5th Cir. 1961); Sunray Mid-Continent Oil Co. v. Federal Power Comm., 270 F.2d 404 (10th Cir. 1959)