**MICHIGAN GAS AND ELECTRIC COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION,**
**Respondent.**

**Michigan Wisconsin Pipe Line Company,**
**Intervenor.**

No. 15592.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 6, 1961.

Decided April 20, 1961.

Petition for Rehearing En Banc Denied
June 1, 1961.

---

Mr. Reuben Goldberg, Washington, D. C., with whom Mr. Melvin Richter, Washington, D. C., was on the brief, for petitioner.

Mr. David J. Bardin, Atty., Federal Power Commission, Washington, D. C., with whom Messrs. John C. Mason, Gen. Counsel, Federal Power Commission, Washington, D. C., Howard E. Wahrenbrock, Sol., Federal Power Commission, and Robert L. Russell, Asst. Gen. Counsel, Federal Power Commission, Washington, D. C., were on the brief, for respondent.

Mr. Charles V. Shannon, Washington, D. C., with whom Mr. Louis Flax, Washington, D. C., was on the brief, for intervenor.

Before WILBUR K. MILLER, Chief Judge, and EDGERTON and DANAHER, Circuit Judges.

WILBUR K. MILLER, Chief Judge.

The Michigan Gas and Electric Company distributes manufactured gas at retail in several communities in the Upper Peninsula of Michigan. For the purpose of obtaining natural gas for its distribution systems, it intervened in the proceedings before the Federal Power Commission in which Midwestern Gas Transmission Company was seeking authority to import natural gas from Canada and in which Midwestern and Michigan Wisconsin Pipe Line Company were seeking authority to construct and operate various facilities for further transmission of the gas so imported.

Michigan Gas proposed to the Commission alternative methods by which its properties could receive the desired supply of natural gas, both of which involved pipe line construction into the Upper Peninsula from Menominee, the most northern point of the system of Michigan Wisconsin.

First, it suggested that Michigan Wisconsin be required to construct and operate a pipe line from Menominee to its various city gates, and to sell and deliver gas to it at those points at the ACQ-1 rate schedule, which is applicable to all other customers of Michigan Wisconsin.[1] Second, Michigan Gas suggested as an alternative that it construct a pipe line from Menominee to its city gates, and take delivery at Menominee, but at the DCQ rate, which is lower than the average rate paid by other customers of Michigan Wisconsin under its system-wide ACQ rate schedule.

In rejecting the first of these proposals, the Commission noted that under it Michigan Wisconsin would be required to invest four and one-half million dollars in a new pipe line from Menominee northwardly to the scattered properties of Michigan Gas. It found that, instead of having been used in the consideration of such substantial extensions, the so-called 10-cent formula is in general applicable to relatively short laterals; and that the maximum distance Michigan Wisconsin has built under it in the past is a line some seventeen and one-half miles long at a cost of approximately $300,000. The Commission further noted

1. Michigan Gas urged that this substantial extension of facilities by Michigan Wisconsin would be consistent with the latter's so-called 10-cent formula, which was being used by Michigan Wisconsin as a convenient yardstick in determining the economic feasibility of constructing comparatively short laterals to serve small communities located near its existing main pipe lines.

This formula "provides that the operating costs of the lateral, or the portion of the lateral, to be installed by Michigan Wisconsin shall not exceed 10-cents per Mcf on the basis of the estimated annual firm sales to the distribu-

tion project in the third year. In the formula, the operating costs are set out as 15% of the estimated cost of construction of the lateral, or portion of the lateral and appurtenant facilities, as follows:

| | |
|---|---|
| Return | 6.0% |
| Income Taxes | 3.0% |
| General Taxes | 1.5% |
| Depreciation | 3.5% |
| Operation and Maintenance | 1.0% |
| | 15.0% |

Michigan Wisconsin Pipe Line Co., et al., 21 F.P.C. 552, 558, n. 5 (1959).

that, under the first proposal of Michigan Gas, Michigan Wisconsin would be obligated to invest the additional sum of nearly two and one-half million dollars in adding capacity to the line from Waupaca, Wisconsin, to Menominee, which is now merely a lateral, solely to provide service to the Upper Peninsula. The Commission therefore found that adoption of this proposal would impose an excessive burden on the existing customers of Michigan Wisconsin.

As to the second of petitioner's alternative proposals, the Commission found that if Michigan Gas were permitted to purchase gas at Menominee under the DCQ rate, the result would be discrimination against the existing customers of Michigan Wisconsin, and summarized its reasoning by adopting this language from its staff's brief:

> "Finally, there are certain areas of this country which are situated in unfortunate geographical locations in relation to the availability of natural gas. It is no fault of these areas that they happen to be victims of geography. On the other hand, the existing customers can hardly be required to pay excessive costs just to make certain that the areas which are located a great distance from the source of supply may have the benefits of natural-gas service. The hard realities of such circumstances are that those areas must be willing to pay the costs associated with obtaining natural-gas service or be satisfied with other fuels which may be less desirable but which may be more economical than natural gas."

Having rejected these proposals, the Commission directed Michigan Wisconsin to deliver natural gas to Michigan Gas at Menominee in volumes sufficient to serve the Upper Peninsula distribution systems, and to charge therefor the uniform rate applicable to all customers of Michigan Wisconsin.[2] Thus, although Michigan Wisconsin was not required to construct the expensive facilities necessary to connect Menominee with the city gates in the Upper Peninsula, it was required to bear the cost of enlarging the capacity of the lateral from Waupaca to Menominee.

Dissatisfied with the Commission's action, Michigan Gas petitions for review of so much of the order as relates to it. It charges that unlawful discrimination against consumers in the Upper Peninsula will result, in violation of Section 4(b) of the Natural Gas Act.[*] It asks this court to set aside the portion of the order of which it complains, and to remand the case to the Commission with directions to enter an order directing Michigan Wisconsin to deliver gas to the petitioner under either of the two alternative proposals which petitioner advanced before the Commission and which were rejected as contrary to the public interest.

It is obvious that either of the proposals of Michigan Gas would unduly discriminate in its favor, and would impose an undue burden upon the other customers of Michigan Wisconsin. The findings of the Commission are adequately supported by the record, and we cannot say they are clearly erroneous. This court stated in Battle Creek Gas Co. v. Federal Power Comm., 1960, 108 U.S.App.D.C. 209, 213, 281 F.2d 42, 46:

> "The role of reviewing courts in passing on the rate-making methods used by administrative agencies is necessarily narrow. These matters are properly for the Commission, and its determination is to be disturbed for only the most basic forms of abuse."

---

2. The Commission's order accompanying its opinion of October 31, 1959, also authorized the Midwestern Gas Transmission Company to import gas from Canada, authorized Midwestern and Michigan Wisconsin to construct and operate various facilities not material to the matter under consideration, and ordered service to Michigan Gas on the basis indicated.

* 15 U.S.C.A. § 717c(b).

The same may be said about the present order which deals with rates and service. Since we find no abuse on the part of the Commission, its order must be upheld.

Affirmed.