**ASHLAND OIL & REFINING COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

No. 19260.

United States Court of Appeals Sixth Circuit.

Jan. 15, 1970.

B. J. Bradshaw, Houston, Tex., for petitioner; Alan R. Vogeler, Cincinnati, Ohio, Richard L. McGraw, Jay W. Elston, Houston, Tex., on brief; Kyte, Conlan, Wulsin & Vogeler, Cincinnati, Ohio, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., of counsel.

David F. Stover, Atty., F. P. C., Washington, D. C., for respondent; Richard A. Solomon, Gen. Counsel, Peter H. Schiff, Solicitor, Leo E. Forquer, Asst. Gen. Counsel, F. P. C., Washington, D. C., on brief.

Kenneth Heady, Bartlesville, Okl., for intervenor; Lloyd G. Minter, John R. Rebman, Bartlesville, Okl., Augustus Beall, III, Cincinnati, Ohio, on brief; Hoover, Beall & Eichel, Cincinnati, Ohio, of counsel.

Before PHILLIPS, Chief Judge, and CELEBREZZE and McCREE, Circuit Judges.

PHILLIPS, Chief Judge.

Ashland Oil & Refining Company (Ashland) petitions to review and set aside a declaratory order of the Federal Power Commission issued September 3, 1968, rehearing denied, November 1, 1968. 40 FPC 390, 1202. The controversy originated in a contract dispute between Ashland and Phillips Petroleum Company (Phillips).[1] Ashland claims a right to recover for certain increased rates involved in the sale of natural gas to Phillips. Phillips resists the claim. The Commission interpreted its regulations to mean that Ashland is not entitled to recover from Phillips for the period prior to 1966 because Ashland had not filed rate increase notices with the Commission during that period.

In 1945 the Michigan-Wisconsin Pipe Line Company (Michigan-Wisconsin) applied to the Commission for a certificate of public convenience and necessity covering the construction of a proposed pipeline from the Texas Panhandle area to customers in Michigan and Wisconsin. Michigan-Wisconsin proposed to buy gas from Phillips, which in turn was to obtain part of its supply from a group of producers, including Ashland's predecessor. Phillips entered into two contracts with Ashland's predecessor. One was executed in 1945 and amended in 1950; the other was executed in 1953. These contracts provided that Phillips would pay a specific initial price for gas purchased by it, with periodic increases every five years. The contracts further provided that if Phillips increased its resale rate, Ashland's predecessor would be entitled to a proportional increase in its base rate. The latter provision is described as a spiral escalation clause, the

1. Phillips was denied leave to intervene in this Court but was permitted to file a brief amicus curiae.

effect of which is to allow increased rates to Ashland's predecessor in event Phillips increased its rates to Michigan-Wisconsin. The gas purchased from Ashland is gathered by Phillips and transported to its plant in Sherman, Texas, where it is processed and the residue sold to Michigan-Wisconsin.

The contracts and amendments were executed prior to the decision of the Supreme Court in 1954 in Phillips Petroleum Co. v. Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035, holding producers to be subject to federal regulation. Soon after this decision was rendered the Commission determined that contract rates in effect as of the date of the Supreme Court decision should be filed as initial producer rates. Ashland's predecessor made this required filing with the Commission to reflect its contract prices as of June 7, 1954. During the period between 1954 and 1966 Ashland and its predecessor did not make any filings with the Commission for any rate increases. During the same period Phillips had filed for a number of increases on its sales to Michigan-Wisconsin, and the Phillips increases had become effective. The Commission found that none of the filings of Phillips purported to cover Ashland or could be treated as filings on behalf of Ashland. The declaratory order expressly states that under the regulations of the Commission Phillips was "neither obligated nor authorized to make any filing for Ashland." In 1966 Ashland filed rate increase notices for its sales to Phillips, which were permitted to become effective. After that date Ashland has received from Phillips the price it considers proper. The present controversy involves the period between February 1, 1955, and April 30, 1966. Ashland claims, *inter alia*, that Phillips owes it $527,194.97, based on rate increases made by Phillips during that period. Phillips maintains that it cannot pay the claimed increases lawfully because Ashland did not file rate increase notices. The Commission so interpreted its regulations in its declaratory order.

On March 28, 1967, Ashland sued Phillips in the United States District Court for the Southern District of Texas to recover the sums claimed to be due under the contracts, as well as for certain other relief not involved in this review. This action subsequently was transferred to the Northern District of Oklahoma, where it is still pending. Phillips filed a motion in the District Court to dismiss that suit on the ground that the complaint failed to state a cause of action, since Ashland had not filed its claimed increases with the Commission, or, alternatively, on the ground that the controversy was within the exclusive jurisdiction of the Commission. This motion to dismiss was denied by the District Court on November 7, 1968, after the entry of the declaratory order of the Commission under review in the present proceeding.

On November 15, 1967, after the initiation of the action in the District Court, Phillips filed a petition with the Commission for a declaratory order. On September 3, 1968, the Commission issued its declaratory order, ruling that under its regulations Ashland and its predecessor made no proper filing of the claimed rates between 1954 and April 30, 1966, and therefore Ashland cannot recover increased rates for this period.

We affirm.

I.

Ashland contends that the Commission wrongfully asserted primary jurisdiction. We agree with the Commission that the issue of primary jurisdiction is not presented in this case.

The doctrine of primary jurisdiction, first enunciated by Justice White (later Chief Justice) in Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, is a rule of judicial forebearance.

In United States v. Western Pacific R. Co., 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126, the Court said:

"The doctrine of primary jurisdiction, like the rule requiring exhaus-

tion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views."

 This Court has viewed the doctrine as one of judicial self restraint. See, Elgin Coal Co. v. Louisville & Nashville R. R. Co., 411 F.2d 1043 (6th Cir.); Crain v. Blue Grass Stockyards Co., 399 F.2d 868 (6th Cir.). In *Crain* the doctrine is discussed in some detail. We view the doctrine as setting out a rule which is applied by *courts* in proper cases to permit administrative agencies to make initial determinations of matters affecting a controversy. The doctrine of primary jurisdiction is not a grant of power to regulatory agencies, but a self-imposed restraint adopted by a court so as to enable an administrative agency to exercise a power it already possesses. Administrative agencies do not make a determination as to whether or when to apply the doctrine. It is initiated and invoked in the first instance by the courts. The invocation of the doctrine by a court does not terminate the court's jurisdiction. The Court may retain jurisdiction while awaiting a decision by the administrative agency.

An example of the application of the doctrine of primary jurisdiction by judicial deferral of an adjudication awaiting initial decision by the Federal Power Commission is found in J. M. Huber Corp. v. Denman, 367 F.2d 104, 108 (5th Cir.).

We therefore hold that Ashland's contentions based on the doctrine of primary jurisdiction are without merit.

## II.

At least to a certain extent this case presents a question of *concurrent* jurisdiction, not *primary* jurisdiction. The Commission has jurisdiction over rates, filing and notice as to both Ashland and Phillips. The District Court has jurisdiction in an action based upon asserted breach of contract.

Under the Natural Gas Act matters of rate regulation, filing and notice procedures are within the express statutory authority of the Commission. 15 U.S.C. § 717c. This is an area in which the Commission, pursuant to Congressional authorization, has promulgated regulations. 18 C.F.R. Chapter 1, Subchap. E, §§ 154.91, 154.94. Under this act and regulations, as construed by the Commission, a change in rate levels cannot become effective without the filing of a rate change with the Commission. The order of the Commission in the present case is confined to matters relating to rates, filing and notice. The Commission did not undertake to interpret the contracts between the parties.

 The Commission has statutory authority to issue declaratory orders. 15 U.S.C. § 717o, 5 U.S.C. § 554(e). Ashland contends that since the District Court action was filed first, the Commission should have refrained from issuing its declaratory order pending final disposition of the court proceedings.

In a case wherein an *in personam* action first had been filed in a State court and thereafter a separate action raising the identical issues was filed in a United States District Court, the Supreme Court said in Kline v. Burke Const. Co., 260 U.S. 226, 230, 43 S.Ct. 79, 81, 67 L. Ed. 226, 24 A.L.R. 1077:

"But a controversy is not a thing, and a controversy over a mere question of personal liability does not in-

volve the possession or control of a thing, and an action brought to enforce such a liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of *res adjudicata* by the court in which the action is still pending in the orderly exercise of its jurisdiction, as it would determine any other question of fact or law arising in the progress of the case. The rule, therefore, has become generally established that where the action first brought is *in personam* and seeks only a personal judgment, another action for the same cause in another jurisdiction is not precluded."

In Florida v. United States, 285 F.2d 596, 604 (8th Cir.), it was held *inter alia* that the pendency of an action by a taxpayer in the Tax Court did not constitute a jurisdictional bar to an action by the United States in the District Court to enforce payment of taxes. This opinion states: "Courts are not required by law to forebear but may do so as a matter of comity and to avoid duplicate litigation." 285 F.2d at 604.

In cases where federal courts have enjoined a party from prosecuting a second action, the matter has been viewed as resting within the equitable discretion of the court. See, e. g., Small v. Wageman, 291 F.2d 734 (1st Cir.); National Equipment Rental Ltd. v. Fowler Poultry & Egg Co., 287 F.2d 43 (2d Cir.).

We see no reason why the rule permitting a second tribunal to proceed to the decision of an in personam matter within its jurisdiction, in spite of the fact that another action between the same parties is pending in another tribunal, should not be applicable as between a United States District Court and a federal administrative agency in which Congress expressly has placed responsibility for regulation in a specific area. See Federal Trade Commission v. Cement Institute, 333 U.S. 683, 694, 68 S.Ct. 793, 92 L.Ed. 1010, rehearing denied, 334 U.S. 839, 68 S.Ct. 1492, 92 L.Ed. 1764.

In the present case, the action now pending in the United States District Court is between two private litigants. The Federal Power Commission is not a party to that suit. The matter before this Court is a petition to review and set aside an order of the Commission which was entered in the exercise of jurisdiction expressly conferred by Congress.

Ashland relies strongly upon California v. Federal Power Commission, 369 U.S. 482, 82 S.Ct. 901, 8 L.Ed.2d 54. In that case the Supreme Court held that the Commission should have stayed its determination when its decision would affect issues in an antitrust action filed by the Attorney General in the United States District Court under the Clayton Act. We have concluded that *California* is distinguishable on its facts and is not authority for the proposition advocated by Ashland that the Commission was obligated to withhold its decision in the present case.

In *California* the El Paso Natural Gas Company acquired the stock of the Pacific Northwest Pipeline Corporation. The antitrust division of the Department of Justice opposed the acquisition, and on July 22, 1957, filed suit in the District Court charging violation of § 7 of the Clayton Act. On August 7, 1957, El Paso applied to the Federal Power Commission pursuant to § 7 of the Natural Gas Act for authority to acquire the assets of Pacific Northwest.

The Justice Department requested the Commission to stay its proceeding but this request was refused. Later the Commission prevailed upon the court to continue the antitrust action pending completion of the proceeding before the Commission. The Supreme Court held that it was the Commission which ought to withhold its determination pending

resolution of the antitrust action in the District Court. While noting that the Commission had undertaken to make findings under the Clayton Act reserved to the Courts, the Supreme Court based its holding on the "practical" reasons for requiring the Commission to withhold its hand. These reasons were that: (1) if the court disapproved the merger after the Commission had approved it, an "unscrambling" would be necessary, (2) there might be complicated tax problems, and (3) a Commission finding of "public convenience and necessity" would carry its "momentum" into the court's antitrust determination. The Court said:

> "Our function is to see that the policy entrusted to the courts is not frustrated by an administrative agency. Where the primary jurisdiction is in the agency, courts withhold action until the agency has acted. [Citation omitted.] The converse should also be true, lest the antitrust policy whose enforcement Congress in this situation has entrusted to the courts is in practical effect taken over by the Federal Power Commission." 369 U.S. at 490, 82 S.Ct. at 906.

The rationale of *California* requires close examination of the policies of the statutes involved and scrutiny of the practical effects of whether the court or the Commission should be permitted to proceed to a first determination.

We consider it to be of controlling significance that under the Natural Gas Act the Commission has responsibility for matters of rate regulation, filing and notice procedures. 15 U.S.C. § 717c. This is not a case where the Commission has acted on matters within the exclusive cognizance of the courts.

Further, unlike California v. Federal Power Commission, none of the practical reasons are present here which the Supreme Court enumerated in that case as a basis for holding that the Commission ought to have deferred its decision.

We hold that the Congressional regulatory scheme here involved did not operate to compel the Commission in the present proceeding to withhold its declaratory order pending a final decision by the United States District Court.

### III.

■■ On the merits, Ashland urges that it has complied with the filing and notice requirements of the Natural Gas Act. The Commission ruled to the contrary.

On a petition to review orders of the Commission under the Natural Gas Act, the scope of review of the Court of Appeals is limited. As to factual matters the findings of the Commission are conclusive if supported by substantial evidence. 15 U.S.C. § 717r(b); Cincinnati Gas & Electric Co. v. F. P. C., 389 F.2d 272 (6th Cir.), cert. denied, 393 U.S. 826, 89 S.Ct. 89, 21 L.Ed.2d 97. As to other matters within the jurisdiction of the Commission under the Act, a reviewing court accords deference to the Commission as a specialized agency created by Congress to deal with complex problems. California Gas Producers Ass'n v. F. P. C., 383 F.2d 645 (9th Cir.).[2]

---

2. An example of deference by Courts to an administrative body occurred in another action involving Phillips, in which there was a disagreement between federal courts and a State regulatory commission. The United States Court of Appeals for the Tenth Circuit affirmed a District Court decision that rates promulgated by the Oklahoma Corporation Commission applied to certain overriding royalty interests of gas leases between Phillips and Cabot Carbon Co. Phillips Petroleum Co. v. Cabot Carbon Co., 210 F.2d 841 (10th Cir.). Thereafter, Phillips applied to the State Commission for an order interpreting and clarifying the rate order. The Commission held that its rate order was not applicable to the overriding royalty interests of the Phillips-Cabot leases.

Phillips then sought review of the Court of Appeals decision by the United States Supreme Court. The Supreme Court remanded the case to the Court of Appeals for further consideration in light of the Commission's order. 348 U.S. 867; 75 S.Ct. 105, 99 L.Ed. 682. Following chronologically an affirmance of the Commission's order by the Supreme Court of

As to such matters this Court does not substitute its judgment for that of the Commission, even though we do not "accept the agency determination in blind faith." Skelly Oil Co. v. F. P. C., 375 F.2d 6, 31 (10th Cir.), modified on other grounds, sub nom., Permian Basin Area Rate Cases, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312, rehearing denied, 392 U.S. 917, 88 S.Ct. 2050, 20 L.Ed.2d 1379. As to matters other than the issue of whether there is substantial evidence to support the Commission's findings, this Court reviews to determine whether a rational basis exists for a conclusion, Consolidated Edison Co. of New York v. F. P. C., 271 F.2d 942, 953 (3rd Cir.), rev'd on other grounds, 365 U.S. 1, 81 S.Ct. 435, 5 L.Ed.2d 377; see, also Michigan Wisconsin Pipe Line Co. v. F. P. C., 263 F.2d 553 (6th Cir.); or whether there has been an abuse of discretion, Michigan Gas & Electric Co. v. F. P. C., 110 U.S.App.D.C. 183, 290 F.2d 374, cert. denied, 368 U.S. 897, 82 S.Ct. 177, 7 L.Ed.2d 95; Battle Creek Gas Co. v. F. P. C., 108 U.S.App.D.C. 209, 281 F. 2d 42; or to determine whether the Commission's order is arbitrary or capricious or not in accordance with the purpose of the Act. Kentucky Natural Gas Corp. v. F. P. C., 159 F.2d 215 (6th Cir.); J. M. Huber Corp. v. F. P. C., 294 F.2d 568 (3rd Cir.).

▪ We cannot say that the Commission's construction of § 4(d) of the Act, 15 U.S.C. § 717c(d), and its regulations thereunder, 18 C.F.R. Chap. 1, Subchap. E, § 154.94, as requiring that the seller file rate increase notices with the Commission is arbitrary or capricious or not within the purposes of the Act. J. M. Huber Corp. v. F. P. C., *supra.* Fur-

ther, we cannot say that the Commission's order declaring that Ashland is not entitled to collect a non-filed rate is without rational foundation, Consolidated Edison Co. of New York v. F. P. C., *supra,* in view of the regulatory scheme entrusted by the Congress to the Commission. California Gas Producers Ass'n v. F. P. C., *supra.*

We hold that under the facts and circumstances of this case the Commission's order does not have infirmities which would warrant interference by this Court.

In conclusion we re-emphasize that the jurisdiction of this Court in reviewing an order of the Commission is extremely narrow. F. P. C. v. Natural Gas Pipeline Co., 315 U.S. 575, 585, 62 S.Ct. 736, 86 L.Ed. 1037. We express no opinion as to what effect the Commission's order or the opinion of this Court in the present proceeding may have upon the case now pending in the United States District Court in Oklahoma. These are matters for determination by the District Court and ultimately by the Court of Appeals of the Tenth Circuit.

The order of the Commission points out that the court litigation involves contractual issues pertaining to the applicability of the statute of limitations, unjust enrichment and estoppel. There is also presented a contractual question involving helium. The Commission did not pass upon these issues, and this Court does not do so.

We have considered all the contentions of Ashland and find them to be without merit.

The order of the Commission is affirmed.

Oklahoma, 287 P.2d 675, the Court of Appeals withdrew its prior opinion and reversed the District Court, thus adopting

the Commission's interpretation. 256 F. 2d 751 (10th Cir.).