ASHLAND OIL, INC., Plaintiff,

v.

PHILLIPS PETROLEUM COMPANY,
Defendant.

and

United States of America, Intervenor.

No. 67-C-238.

United States District Court,
N. D. Oklahoma.

Aug. 13, 1973.

As Corrected Aug. 31, 1973.

Gerald Sawatzky and Stanley G. Andeel, Wichita, Kan., Jay W. Elston, of Fulbright, Crooker & Jaworski, Houston, Tex., and John M. Imel, of Martin, Logan, Moyers, Martin & Conway, Tulsa, Okl., for plaintiff.

Richard B. McDermott, of Boesche, McDermott & Eskridge, Tulsa, Okl., and Don L. Jemison, Phillips Petroleum Co., Bartlesville, Okl., for defendant.

Floyd L. France and Dennis A. Dutterer, Dept. of Justice, Washington, D. C., and Nathan G. Graham, U. S. Atty., Tulsa, Okl., for intervenor.

OPINION

BOHANON, District Judge.

This action was initially instituted in the United States District Court for the Southern District of Texas, and was later, by proper proceedings transferred to this Court for trial and disposition. Ashland Oil and Refining Company (hereinafter referred to as Ashland) originally claimed the right to recover moneys from Phillips Petroleum Company (hereinafter referred to as Phillips) representing an alleged deficiency in payments for sale of natural gas under the jurisdiction of the Federal Power Commission. Ashland also asserted claims against Phillips to be paid for he-

lium contained in the jurisdictional mass of natural gas, and which was extracted from the natural gas stream by Phillips under contract with the United States of America through the Department of Interior, Bureau of Mines.

The Court has diversity jurisdiction and federal question jurisdiction, 28 U.S.C.A. §§ 1331(a) and 1332.

Ashland abandoned its claim against Phillips for deficiency payments for sale of natural gas under the jurisdiction of the Federal Power Commission by reason of proceedings before the Federal Power Commission, and an appeal from its order (Ashland Oil and Refining Company v. FPC, 421 F.2d 17, 6th C.A.). Consequently, the only claim remaining for trial and determination by this Court is Ashland's claim for recovery of the reasonable value of helium contained in the natural gas stream delivered by Ashland to Phillips.

Plaintiff Ashland acquired all of the interests of United Producing Company which had entered into a contract with Phillips Petroleum Company on November 8, 1945 (amended Oct. 1, 1950 & June 27, 1956) providing for the sale of natural gas from 15 wells located in Sherman County, Texas. These same parties entered into another gas purchase agreement on April 15, 1953, (amended June 27, 1956) providing for the sale of natural gas from three wells in Hansford County, Texas. These agreements were properly filed with the Federal Power Commission as provided by law and rate schedules were fixed for the sale of said gas. These filings were required under the Natural Gas Act (15 U.S.C. § 717 et seq.) because Ashland's deliveries to Phillips constituted sales of natural gas for resale in interstate commerce. Ashland succeeded to all the rights and interest of United Producing Company. All of the wells above referred to are subject to the contract between Ashland, as successor to United Producing Company, and Phillips Petroleum Company, and Phillips Petroleum Company extracted helium which was contained in the natural gas stream as delivered by Ashland to Phillips.

Ashland's contention is that the title to the helium in the contained natural gas did not pass to Phillips under the gas purchase contracts and if and when Phillips elected to extract the helium from the natural gas stream, plaintiff Ashland was entitled to payment therefor from Phillips for the reasonable value of such helium less certain costs of extraction, and other deductions hereafter referred to.

The defendant contends that when it purchased the gas stream from Ashland, it purchased all of the elements thereof including the helium, and inasmuch as Phillips paid Ashland the Federal Power Commission rate for the gas delivered to Phillips, Phillips became the owner of the entire stream, including the helium, and therefore, is not liable in any sum to Ashland for the helium extracted. Further, Phillips presents the defense of Statute of Limitations claiming that if liable, they are liable only for the helium extracted from the natural gas for two years prior to the filing of this action and thereafter; further Phillips claims that by reason of payment to Ashland for the natural gas, plaintiff is barred by the defenses of accounts stated, accord and satisfaction, and to require payment now would be a violation of the Fifth Amendment to the Constitution of the United States.

The United States of America by Order of the Court was realigned as a party defendant.

### Findings

1. Helium is an unusual element; it is a gas which is inert and noncombustible and is the second lightest element known. Helium is so inert that it will not chemically react or combine with other elements and thus remains as helium forever. It is tasteless, colorless, odorless and invisible. For a more complete description of helium, its unusual characteristics, its uses, and where found, etc., see Northern Natural Gas Co. v. Grounds, 441 F.2d 704 (10 C.A.)

and in the Opinion of District Judge Wesley E. Brown, 292 F.Supp. 619 (D.C.Kan.).

2. The United States of America, through the Department of Interior and the Bureau of Mines of the Department, recognizing the need for the conservation of this rare material and its scarcity, and its need for defense purposes and other important uses, Congress enacted the Helium Act Amendments of 1960 (50 U.S.C. § 167 et seq.) authorizing the United States to enter into a program of conservation of helium for future use; under this program, private companies negotiated contracts with the United States of America through the Department of Interior, Bureau of Mines, to construct plants for the extraction of helium from natural gas streams, then being produced from the Hugoton-Panhandle area; otherwise, this valuable material would be lost at the burner tip of the ultimate user of the gas and discharged into the air as residue.

3. Prior to 1961, the United States Government, with minor exceptions for a short time, was the sole extractor and source of commercial helium. It controlled and fixed the price of all wholesale sales of helium.

4. Pursuant to the authority granted by Congress, the United States entered into five long-term helium purchase contracts with four companies, one of which was Phillips Petroleum Company, which contracted on November 13, 1961, with the United States to sell a helium gas mixture from two plants it proposed to build, the Sherman Helium Plant and the Dumas Helium Plant. These plants were constructed so as to extract for delivery and sale to the government a helium gas mixture (crude helium) which was to consist of at least 50% helium under the contract requirements, the remainder being essentially nitrogen. Under this contract, the United States agreed to pay a base price of $10.30 per m. c. f. (thousand cubic feet) of contained helium in the crude product, which price was subject to escalation in accordance with the contract. The base price was also subject to escalation in the event Phillips was required to pay third parties "for the acquisition of helium."[1] Specifically, under the contract between the United States and Phillips, producers of commingled helium such as Ashland and the mineral or royalty owners, being third parties, and if they were entitled to recover from Phillips the reasonable value of the helium produced from the commingled gas Phillips was required to pay under paragraph 7.4 of the contract, part 2 of the unit price only approximately $3.00 per m. c. f. and the United States under the contract was required to reimburse or indemnify Phillips for any excess of $3.-

[1]. "In addition to all other amounts payable under this contract Buyer shall pay to Seller all amounts, except as hereinafter provided, that Seller shall pay subsequent to the date of this contract, directly or through an affiliated company, to parties other than itself or an affiliated company for the acquisition of helium in the natural gas, as defined herein, or for any interest in such helium. Any such payment to qualify for inclusion hereunder shall be made only with the consent of Buyer; and for the purposes of this paragraph 7.4 Buyer shall be deemed to have consented to any and all such payments in satisfaction or settlement of any claims to helium in the natural gas, as defined herein, or to any interest in such helium that have been judicially determined in favor of any claimants by any Federal court or the highest appellate court of any state. Further, Buyer shall be deemed to have consented to any and all such payments under circumstances similar to any such judicially determined claim if such payments are made generally in accordance with the findings, principles, and conclusions of any such judicial determination. The amounts that Buyer shall be required to pay to Seller in accordance with this paragraph shall not include an amount to be calculated applicable to each such acquisition equal to twenty-nine (29) per cent of the weighted average of part two of the unit price or unit prices in effect during the time covered by such acquisition multiplied by the volume in MCF of helium in the natural gas, as defined herein, covered by such acquisition."

686b9b

00 per m. c. f. which Phillips was required to pay. This was an important part of the contract because it indemnified Phillips against required payments to third persons of the amount in excess of $3.00 per m. c. f. and thus gave the United States the right to purchase this helium for a lesser sum than, no doubt, otherwise would have been required.

5. The United States took delivery of the helium gas mixture from Phillips and transported it through its own pipeline to storage in government-owned storage facilities at Cliffside Field near Amarillo, Texas. From there it can be withdrawn as needed, and purified to grade A helium (99.995% pure helium) in government-owned plants at approximately $2.00 per m. c. f. helium.

6. Under the contracts the government agreed to take all of the helium produced up to certain amounts, and the government sold grade A helium at wholesale F.O.B. its helium plants for $35.00 per m. c. f. and has done so since the fall of 1961. All federal departments and agencies were required to purchase their helium needs from the United States at this price. The Bureau of Mines has the statutory authority and responsibility to fix the price at whatever level is necessary to pay for costs associated with the helium conservation program, including any additional payments which may be required to be paid by the United States as a result of this case.

7. Beginning in 1961, several private helium plants have been built to sell pure helium in the private commercial market. Although the government price for its helium has remained at $35.00 per m. c. f., the prices for which helium has sold on the private market from 1963 through 1972 have ranged from $35.00 to approximately $20.00 per m. c. f. Such prices are wholesale prices and the only market prices for sale of helium in the United States during the period in question.

8. The Court finds the fair and reasonable value of grade A helium during the periods here involved was $20.00 per m. c. f.

9. Recognizing the benefit to United States and the importance of paragraph 7.4 of the United States-Phillips helium contract, the Associate Solicitor of the Division of Mineral Resources of the Department of the Interior, and who approved the contract provision, correctly described it as an escalation in price:

"This provision in effect provides for escalation in price when the cost of the raw material increases." (Pls. Ex. 39, p. 3)

10. By reason of the above escalation provision in the contract, the United States was able to obtain a base price substantially lower than would otherwise have been possible.

11. There was no known wellhead price fixed for the helium gas in the gas stream, and it was and is impractical and uneconomical to attempt to extract the helium gas at the wellhead. This can only be done economically through large plants with large volumes of gas to process.

12. The gas stream delivered by Ashland to Phillips contained all of the natural gas liquids, such as butane, propane and pentanes plus, which Phillips extracts and did extract from the feed gas and markets these gases in liquid form. Because these rich liquids are in concentrated form (about 10% of the volume of the total feed gas stream), Phillips has been able to extract and market substantial additional quantities of such liquids, above and beyond what its existing gasoline plants would be able to extract at a substantial savings in cost. These additional liquids are in substance a by-product of the helium plant operation.

13. Experts who testified in the trial of this case estimate that the Texas Panhandle, Southwestern Kansas and Western Oklahoma constitute 99% of the free world's known commercial reserves of helium. This area is known as the Hugoton Field, and Ashland wells which deliver gas to Phillips are in this field.

14. To arrive at the reasonable wellhead value of Ashland's helium delivered to Phillips, there should be deducted from the value those costs incurred by Phillips in extracting and delivering the helium and also the cost of purification. In determining these costs, the total costs of the helium plant itself should be credited and reduced by a fair allocation of a portion of such costs to the incremental, or additional liquids, which the helium plant generates. This can equitably be done by calculating a fair share of the incremental benefits accruing to Phillips in its natural gas liquids operation as a direct result of the helium plant operation. Failure to assign a portion of helium plant costs to the incremental liquids operation would inequitably burden the helium plant with substantial costs which are incurred and which result in the production of the incremental liquids.

15. After allowing for the following deductions, the Court finds that the reasonable value of the helium delivered by Ashland to Phillips is shown in the following table. The deductions referred to include:

(a) All helium plant costs, including a 10% rate of return to Phillips on its stockholder equity;

(b) The incremental liquids benefit which should be applied to reduce costs of the helium plant;

(c) $2.00 per m. c. f. for purification.

16. The Court finds and is of the opinion that the following table shows the reasonable cost of extracting the helium, the reasonable value of helium on a yearly basis from the Ashland gas delivered to Phillips and further shows the volume of helium per m. c. f. extracted by Phillips for the ten year period in question and the total value thereof; likewise it shows the interest computed at 6% per annum for the total recovery of helium delivered by Ashland and recovered by Phillips and the total amount of money judgment plaintiff is entitled to recover:

*Reasonable Value Calculations*

| | A | B | C | D | E |
|---|---|---|---|---|---|
| | | | | Minimum Value for Crude Helium $20.00 Grade A Helium Value less $2.00 / mcf Purification Cost | Reasonable Value of Helium Delivered by Ashland to Phillips (Columns [d] less [c]) |
| | Helium Plant Costs (Plt's Ex. 61 & 62, line 10) | Liquid Benefit Credit (Plt's Ex. 61 & 62, line 12) | Net Helium Cost (Columns [a] less [b]) | | |
| | | | SHERMAN HELIUM PLANT | | |
| 1963 | $4.82 | $1.01 | $3.81 | $18.00 | $14.19 |
| 1964 | 3.53 | .10 | 3.43 | 18.00 | 14.57 |
| 1965 | 4.06 | .27 | 3.79 | 18.00 | 14.21 |
| 1966 | 4.09 | .45 | 3.64 | 18.00 | 14.36 |
| 1967 | 4.94 | 1.06 | 3.88 | 18.00 | 14.12 |
| 1968 | 4.22 | 1.16 | 3.06 | 18.00 | 14.94 |
| 1969 | 4.50 | .82 | 3.68 | 18.00 | 14.32 |
| 1970 | 5.16 | 2.20 | 2.96 | 18.00 | 15.04 |
| 1971 | 5.31 | 4.29 | 1.02 | 18.00 | 16.98 |
| 1972 | 5.52 | 3.97 | 1.55 | 18.00 | 16.45 |
| | | | DUMAS HELIUM PLANT | | |
| 1966 | 5.93 | .00 | 5.93 | 18.00 | 12.07 |
| 1967 | 6.46 | .78 | 5.68 | 18.00 | 12.32 |
| 1968 | 5.91 | 1.01 | 4.90 | 18.00 | 13.10 |
| 1969 | 6.55 | .31 | 6.24 | 18.00 | 11.76 |
| 1970 | 5.89 | 1.04 | 4.85 | 18.00 | 13.15 |
| 1971 | 6.39 | 1.58 | 4.81 | 18.00 | 13.19 |

*Reasonable Value Calculations—Continued*

| | F | G | H | I | J |
|---|---|---|---|---|---|
| | Vol. of Ashland Helium Extracted by Phillips (Plt's Ex. 14 & 15, Sch. 3) | Total Reasonable Value of Ashland Helium Extracted by Phillips Awarded to Ashland | Periods (Yrs.) at interest to July 1, 1973 | Interest at 6% per year | Total Recovery By Ashland |

SHERMAN HELIUM PLANT

| | m.c.f. | | | | |
|---|---|---|---|---|---|
| 1963 | 7,791 | $110,554.29 | 9½ | $63,015.95 | $173,570.24 |
| 1964 | 8,076 | 117,667.32 | 8½ | 60,010.33 | 177,677.65 |
| 1965 | 8,997 | 127,847.37 | 7½ | 57,531.32 | 185,378.69 |
| 1966 | 7,521 | 108,001.56 | 6½ | 42,120.61 | 150,122.17 |
| 1967 | 5,757 | 81,288.84 | 5½ | 26,825.32 | 108,114.16 |
| 1968 | 6,742 | 100,725.48 | 4½ | 27,195.88 | 127,921.36 |
| 1969 | 6,033 | 86,392.56 | 3½ | 18,142.44 | 104,535.00 |
| 1970 | 5,460 | 82,118.40 | 2½ | 12,317.76 | 94,436.16 |
| 1971 | 5,944 | 100,929.12 | 1½ | 9,083.62 | 110,012.74 |
| 1972 | 6,082 | 100,048.90 | ½ | 3,001.47 | 103,050.37 |

DUMAS HELIUM PLANT

| | | | | | |
|---|---|---|---|---|---|
| 1966 | 431 | 5,238.38 | 6½ | 2,042.97 | 7,281.35 |
| 1967 | 950 | 11,704.00 | 5½ | 3,862.32 | 15,566.32 |
| 1968 | 949 | 12,431.90 | 4½ | 3,356.61 | 15,788.51 |
| 1969 | 890 | 10,466.40 | 3½ | 2,197.94 | 12,664.34 |
| 1970 | 681 | 8,955.15 | 2½ | 1,343.27 | 10,298.42 |
| 1971 | 444 | 5,856.36 | 1½ | 527.07 | 6,383.43 |
| | | | | TOTAL | $1,402,800.91 |

17. The Court finds that the attorneys for plaintiff have expended many hours prosecuting this lawsuit against the defendant and are entitled to be paid the total attorneys fees as set out below:

| Jay W. Elston firm Houston, Texas | 1059 hours at $50.00 | $ 52,950.00 |
|---|---|---|
| | 1059 hours at $35.00 | 37,065.00 |
| Gerald Sawatzky firm Wichita, Kansas | 550 hours at $50.00 | 27,500.00 |
| | 275 hours at $35.00 | 9,625.00 |
| John M. Imel firm Tulsa, Oklahoma | 201.4 hours at $50.00 | 10,070.00 |
| | TOTAL | $137,210.00 |

The Court finds that the plaintiff Ashland should have judgment against the defendant Phillips for attorneys fees in the total amount of $137,210.00 for the services as above specified.

18. The Court finds that Ashland has prosecuted this lawsuit for the total helium contained in the gas stream from its respective gas wells delivered by Ashland to Phillips; that in prosecuting

this lawsuit the plaintiff Ashland has incurred and paid the following expenses which are not chargeable to the defendant Phillips, but were reasonable and necessary and should be paid on the basis of one-half by Ashland and one-half by the landowners, mineral owners, otherwise royalty owners.

WITNESS:

Leo Garwin
326 Oklahoma Mortgage Bldg.
Oklahoma City, Oklahoma

| | | | |
|---|---|---|---|
| Professional Services | 1969: | $ 2,810.40 | |
| | 1973: | 7,260.95 | $10,071.35 |

Troupe, Kehoe, Whiteaker
& Kent
Certified Public Accountants
2900 Power & Light Bldg.
Kansas City, Missouri

| | | |
|---|---|---|
| Professional Services | $24,600.00 | |
| Travel Expenses | 1,353.73 | |
| Duplicating | 425.00 | $26,378.73 |

Tulsa Reporting Service
526 Mayo Building
Tulsa, Oklahoma

| | | | |
|---|---|---|---|
| Depositions: | May, 1973 | $ 277.15 | |
| Transcript: | June, 1973 | 4,686.00 | $ 4,963.15 |

Interrogs, Inc.
2439 Bank of the Southwest Bldg.
Houston, Texas   77002

| | | | |
|---|---|---|---|
| Depositions: | April, 1973 | $ 552.00 | $ 552.00 |

Fulston, Siefkin, Powers &
Eberhardt
Suite 600
4th National Bank Bldg.
Wichita, Kansas

| | 1968 | 1972 | 1973 | |
|---|---|---|---|---|
| Travel | $157.12 | | $3,028.25 | |
| Long Distance | | $6.99 | 239.34 | |
| Court Reporting | | | | |
| Depositions | | | 2,385.30 | |
| Postage | | .98 | 19.21 | |
| Duplicating | | | 434.40 | |
| TOTAL | $157.12 | $6.97 | $6,106.50 | $ 6,270.59 |

Martin, Logan, Moyers,
Martin & Conway
National Bank of Tulsa Bldg.
Tulsa, Oklahoma

Expenses: (7–1–69 thru 12–31–72)

| | | |
|---|---|---|
| Duplicating | $ 3.90 | |
| Long Distance | 56.81 | |
| Travel | 14.40 | $ 75.11 |

Ashland Oil, Inc.

Employee Travel Expense

| | 1972 | 1973 | |
|---|---|---|---|
| Ray Althouse | | $169.50 | |
| J. C. Coogan | | 160.23 | |
| B. J. White | | 101.02 | |
| D. W. Cox | $179.03 | 405.66 | |
| | $179.03 | $836.41 | $1,015.44 |

Fulbright, Crooker &
  Jaworski
Bank of the Southwest Bldg.
Houston, Texas

| | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 | 1972 | 1973 |
|---|---|---|---|---|---|---|---|---|
| Long Distance | 85.79 | 283.96 | 56.38 | 275.71 | 13.20 | 61.59 | 141.86 | 195.52 |
| Duplicating | 70.76 | 294.20 | 550.45 | 1,105.01 | 21.00 | 18.00 | 214.32 | 160.30 |
| Filing Fees | | 25.00 | | 15.00 | | | | |
| Travel | | 303.72 | 114.24 | 1,341.17 | 126.00 | 120.50 | 1,327.77 | 1,283.63 |
| Printing | | | | 1,879.01 | 89.82 | | | |
| Freight | | | | 11.30* | | | | |
| Secretarial | | | | 80.88 | | | 15.92 | |
| Total | 156.55 | 906.88 | 721.07 | 4,708.08 | 250.02 | 200.09 | 1,699.87 | 1,639.45 |

Total Expenses $10,282.01
Less Amounts Incurred in Connection
  with FPC Proceedings    1,922.89     $ 8,359.12

TOTAL OF ALL EXPENSES INCURRED    $57,685.49

The Court finds that the Plaintiff expended $57,685.49 in the prosecution of this lawsuit which is not assessable or taxable as costs against the defendant, Phillips, and that these costs should be divided equally between plaintiff and landowners, mineral owners (hereinafter referred to as royalty owners), and from the distribution made by plaintiff, Ashland, to royalty owners first should be deducted one-half of the cost above stated as paying the cost assessable to royalty owners.

19. The Court finds from a review of the pleadings, the Complaint, Amended Complaint, Stipulation of Facts, the exhibits and testimony that Ashland has brought, prosecuted and maintained this action on its own behalf and on the behalf of the royalty owners for the delivery of helium in the entire gas stream on a per well-head basis from the inception of the production of helium to June 30, 1972. The Court takes judicial knowledge of the oil and gas leases executed by royalty owners in favor of the lessee and the assignee of the lessee, and that at the time of entering into each of the respective oil and gas leases, no thought of helium rights was considered by either lessee or lessor; that no consideration passed from one to the other for any helium rights; that the helium as contained in the gas was an undealt with commodity except that the lessee had the exclusive right to enter upon the lessor's property and drill and produce gas from said premises; that the exclusive right to drill and produce gas is a perpetual right vested in the lessee so long as oil and gas is produced in paying quantities from the premises by Ashland or its assigns.

The Court finds that the helium hereinabove referred to is and was the sole property of the royalty owners subject to the exclusive right of Ashland to drill and produce gas which contained helium and that their rights are equal and that the proceeds to be derived from the sale of helium should be equally divided between Ashland and the royalty owners and therefore the judgment herein rendered in favor of the plaintiff, Ashland, and against the defendant, Phillips, should be divided equally between Ashland and the royalty owners and on the basis of the payments heretofore made by Ashland to the royalty owners for gas produced and sold to Phillips and transported in interstate commerce under the regulations of the Federal Power Commission; and that Ashland shall first deduct from the royalty owners' portion of the judgment one-half of the costs of prosecuting this action. The equal division between lessor and lessee of the proceeds from the helium is required in equity; otherwise the windfall would give $7/8$ to Ashland and $1/8$ to the

royalty owners, which would be unconscionable and an unjust enrichment to Ashland.

### Conclusions of Law

This litigation is based primarily on the 1960 Act of Congress known as the Helium Act Amendments of 1960 (50 U.S.C. § 167 et seq.) where the United States was authorized and directed to enter into a program of conservation of helium for future use.

■ The evidence is convincing to this Court that the United States, through the defendant, Phillips, and by reason of the Helium Act, confiscated the helium of the plaintiff and royalty owners rather than acquiring it by condemnation; neverthess, the taking was in the nature of condemnation, and the reasonable value of the helium plus interest is proper; that the United States was obligated to pay the reasonable value of said helium in excess of $3.00 per m. c. f. which Phillips was required to pay for the helium all as provided by their contract.

The Court concludes that the law contained in Northern Natural Gas Co. v. Grounds, *supra* governs this case in the matter of reasonable value of helium and the obligation of the defendant to pay that value, and no other authorities need be cited.

Further the United States Court of Appeals for the Tenth Circuit laid down certain guidelines for trial courts in Texaco Inc. v. Phillips Petroleum Company, 481 F.2d 70 (opinion filed July 13, 1973). Here the Court said:

"We have here another controversy over helium. The basic background is outlined in our decision in the Consolidated Helium cases. See Northern Natural Gas Company v. Grounds, * * *. We there held that lessee-producers of natural gas could recover the reasonable value of contained helium out of interpleader funds created by the government's purchases of heli-

um from helium extraction companies and parent pipeline companies.

&ast; &ast; &ast; &ast; &ast; &ast;

In Consolidated Helium we considered the claims of the pipelines and helium separation companies that they were entitled under their gas purchase contracts to receive the entire gas stream at the Federal Power Commission service rate and said that *'private contract law and the principles applicable thereto are not controlling.'*

(Emphasis Added)

&ast; &ast; &ast; &ast; &ast; &ast;

No good purpose would be served by repeating our analysis of the Natural Gas Act and the 1960 Helium Act amendments. We held that, * * * ' * * * the reconciliation of the Natural Gas Act and of the 1960 amendments to the Helium Act to attain a symmetrical whole requires the conclusion that the FPC service rates do not apply to deny recovery for the contained helium which is processed in the separation plants.'

&ast; &ast; &ast; &ast; &ast; &ast;

We thought that we made plain that we did not allow recovery on the application of any principles of equity, see 441 F.2d at 719–720, but on the ground that satisfactory utility regulation does not permit a utility rate to be used to obtain a commodity which is not within the contemplation of that rate.

&ast; &ast; &ast; &ast; &ast; &ast;

We reject defendant's assertion that Consolidated Helium was an interim decision. The Supreme Court denied certiorari, 404 U.S. 951, 92 S.Ct. 268, 30 L.Ed.2d 267, 404 U.S. 1063, 92 S. Ct. 732, 30 L.Ed.2d 751, and 404 U.S. 1065, 92 S.Ct. 732, 30 L.Ed.2d 754. The decision is final and is the law of this circuit. We say nothing on plaintiff's claim that Consolidated Helium is res judicata on the issues presented

here. We are concerned with jurisdiction, not with the merits.

\* \* \* \* \* \*

In Consolidated Helium we pointed out that there are over 30,000 persons receiving income from helium bearing natural gas produced by over 500 lessee-producers under thousands of leases.

\* \* \* \* \* \*

The problems relating to the recovery of the value of the helium content of natural gas traveling in interstate commerce have arisen because of, and under, federal statutes. Plaintiff asserts rights under those statutes and is entitled to sue in federal court. We believe the federal courts have jurisdiction under 28 U.S.C. § 1331(a)."

█ The Court concludes as a matter of law that the plaintiffs are entitled to a legal rate of interest because of the taking. See St. Paul Mercury Indemnity Co. v. United States, 201 F.2d 57 (C. A. 10); T. & M. Transp. Co. v. S. W. Shattuck Chemical Co., 158 F.2d 909 (C.A. 10); Louisiana & Arkansas Railway Co. v. Export Drum Co., 359 F.2d 311 (C.A. 5); Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933).

The Court in Northern Natural Gas Company et al. v. Grounds et al., 441 F.2d 704 (10 Cir.), cert. denied, 404 U.S. 1063–1065, 92 S.Ct. 732, 30 L.Ed.2d 751, issued a post-opinion order, pertaining to costs and the mandate, recognizing the significance of the interest question. Paragraph 15 of the Order dated March 16, 1972, states:

"The right of the lessee-producers to interest, and the amount thereof, on any sums which the District Court may adjudge to be due and owing to them shall be determined by the District Court, subject to review by this Court."

█ The Court concludes as a matter of law that the plaintiff's attorneys are entitled to be paid by the defendants a reasonable attorneys' fee. See United States Fidelity & Guar. Co. v. Hendry Corporation, 391 F.2d 13 (C.A. 5); Boyd Callan, Inc. v. United States, 328 F.2d 505 (C.A. 5).

In T. F. Scholes, Inc. v. United States, 295 F.2d 366 at 370 (C.A. 10) the Court said:

"The fixing of reasonable attorneys fees rested in the sound judicial discretion of the court. . . . "

In Texas Gas Corporation v. Hankamer, 326 S.W.2d 944 (Tex.Civ.App.) it was held that gas and distillate delivered by appellees and processed in a plant was "material furnished", and an award of attorneys' fees was upheld.

The Court concludes as a matter of law that the plaintiff is entitled to judgment as follows:

(a) That plaintiff, Ashland, should have judgment against defendant, Phillips, for helium extracted for the ten-year period from 1963 to December 31, 1972, together with yearly interest thereon at the rate of 6% per annum ending June 30, 1973, in the total amount of $1,402,800.91.

(b) That plaintiff should have judgment for attorneys' fees, otherwise professional services rendered by plaintiff's attorneys in the prosecution of this action in the amount of $137,210.00.

█ (c) That the royalty owners should be paid one-half of the proceeds derived from the sale of helium less one-half of the expenses of $57,685.49 incurred and paid by Ashland in the prosecution of this action and not chargeable to the defendant Phillips.

(d) That the prayer of the Intervenor United States of America is denied.

An appropriate judgment will be entered as herein provided.

### JUDGMENT

Based upon the Memorandum Opinion, Findings of Fact and Conclusions

of Law filed herein this day, the Court enters the following judgment:

1. It is ordered, adjudged and decreed by the Court that plaintiff Ashland Oil, Inc., shall have judgment against defendant Phillips Petroleum Company in the amount of $1,402,800.91 together with accruing interest as provided by law from date of judgment, until paid, for helium sold and delivered during the ten-year period ending December 31, 1972.

2. It is further ordered, adjudged and decreed by the Court that plaintiff Ashland Oil, Inc. shall have judgment against the defendant Phillips Petroleum Company in the amount of $137,-210.00 together with accruing interest as provided by law from the date of this Judgment until the Judgment is paid as reasonable attorneys' fees in the prosecution of this action.

3. It is further ordered, adjudged and decreed by the Court that Ashland Oil, Inc., on receipt of the payment of the helium together with interest thereon, as provided in item (1) above, shall deduct therefrom its expenses of prosecution in the amount of $57,685.49 and pay to its royalty owners on the basis of payments heretofore made to its royalty owners for gas sold and delivered and transported in interstate commerce one-half of said helium receipts together with its one-half of the accrued and accruing interest.

4. It is further ordered, adjudged and decreed by the Court that the defendant Phillips Petroleum Company pay the usual and ordinary costs of this litigation as provided by the Federal Rules of Civil Procedure.

5. It is further ordered, adjudged and decreed by the Court that the prayer of the Intervenor, United States of America, be, and the same is hereby denied. The defendant Phillips Petroleum Company has made no claim for relief as against the United States of America.